# United States Court of Appeals for the Federal Circuit

04-1254
(Opposition No. 91/080,606)


MAYER/BERKSHIRE CORP.,

Appellant,

v.

BERKSHIRE FASHIONS, INC.,

Appellee.


James B. Swire, Dorsey & Whitney LLP, of New York, New York, argued for appellant. With him on the brief was Sandra Edelman.

Ezra Sutton, Ezra Sutton, P.A., of Woodbridge, New Jersey, argued for appellee.

Appealed from: United States Patent and Trademark Office, Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

04-1254
(Opposition No. 91/080,606)


MAYER/BERKSHIRE CORP.,

Appellant,

v.

BERKSHIRE FASHIONS, INC.,

Appellee.

_____

DECIDED:  September 22, 2005
_____


Before NEWMAN, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

NEWMAN, <u>Circuit Judge</u>.


Mayer/Berkshire Corp. appeals the decision of the United States Patent and Trademark Office, Trademark Trial and Appeal Board,[1] dismissing its opposition to the registration by Berkshire Fashions, Inc. of the mark BERKSHIRE for various categories of

---

[1]  <u>Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.</u>, Opposition No. 80,606 (TTAB Dec. 17, 2003).

clothing. The Board held that the opposition is barred by res judicata and collateral estoppel arising from prior district court infringement litigation. We conclude that the Board erred in its application of these doctrines. The dismissal is vacated and the case is remanded to the PTO for further proceedings.

BACKGROUND

Both parties use the word BERKSHIRE in their trade names and as a trademark in association with various items of clothing and accessories. Mayer/Berkshire states that it and its predecessor companies have used BERKSHIRE since 1906 in their trade name and since 1925 as a trademark in association with apparel including socks, hosiery, underwear, gloves, lingerie, nightgowns, pajamas, t-shirts, leotards, and down vests, and in their retail outlet store with a full range of men's, women's, and children's clothing. As of 1990 Mayer/Berkshire had eight registrations for BERKSHIRE in Class 25 for use in connection with hosiery and apparel items.

Berkshire Fashions states that it has used BERKSHIRE in its trade name since 1945, and as a trademark for various goods. In September 1981 Berkshire Fashions filed an application to register the mark BERKSHIRE as applied to articles in Classes 18 and 25. The Class 18 goods included umbrellas, tote bags, and umbrella and scarf sets sold as a unit. The Class 25 goods included sixteen kinds of apparel, viz. raincoats, sweaters, pocket squares, scarves, mantillas, belts, gloves, hats, earmuffs, slippers, tops, blouses, shirts, pants, vests, and uniforms. The examining attorney refused registration in Class 25 because of Mayer/Berkshire's prior registrations of BERKSHIRE in Class 25 for various items of women's and children's garments. Berkshire Fashions then deleted the Class 25 goods from the application. The application with the remaining Class 18 goods was passed

to publication, and Mayer/Berkshire filed an opposition in July 1984 under Section 13 of the Lanham Trademark Act, 15 U.S.C. §1063.

In 1982 Mayer/Berkshire had filed suit against Berkshire Fashions in the United States District Court for the District of New Jersey, alleging trademark infringement and unfair competition. The Board suspended the opposition proceeding in Class 18 until the district court action was concluded. In April 1985 the district court case went to the jury, with the following question:

1.     Have defendants infringed plaintiff's trademark, i.e., is there a likelihood of confusion resulting from the use by defendants of the trademark and trade name "Berkshire"?
If No, answer no more questions; your deliberations are over.

The jury answered "No," and the district court entered judgment for Berkshire Fashions. The Board then dismissed Mayer/Berkshire's opposition, and the registration in Class 18 issued to Berkshire Fashions for use of the mark BERKSHIRE with umbrellas, tote bags, and umbrella and scarf sets. That registration is not here at issue.

In October 1986 Berkshire Fashions filed the application that is the subject of this appeal, seeking registration for the apparel items in Class 25 that it had removed from the earlier application. The trademark examiner rejected the application based on six of Mayer/Berkshire's prior registrations in Class 25. Berkshire Fashions appealed to the Board, who remanded to the examiner to consider the New Jersey litigation. Berkshire Fashions submitted a list of trial exhibits in the New Jersey action that included most but not all of the kinds of items in Berkshire Fashions Class 25 application. Thereafter, after deleting belts and slippers from the list of goods in the application, the examiner passed the Class 25 application to publication. Mayer/Berkshire duly filed a notice of opposition,

alleging likelihood of confusion between the BERKSHIRE mark applied to the Berkshire Fashions items in Class 25 and the items subject to Mayer/Berkshire's registered BERKSHIRE marks.

The Board granted summary judgment in favor of Berkshire Fashions, ruling that the issue of likelihood of confusion had been decided in the New Jersey civil action and could not be re-litigated, applying res judicata and collateral estoppel. The Board held that Mayer/Berkshire was estopped to challenge the registration of BERKSHIRE for the fourteen kinds of goods in Berkshire Fashions' Class 25 application. The TTAB entered final judgment denying the opposition to the Class 25 registration.

## DISCUSSION

This appeal is from the Board's grant of summary judgment in reliance on res judicata and collateral estoppel based on the district court judgment in the infringement litigation. When an administrative agency governed by the Federal Rules grants a motion for summary judgment, the pleadings and record evidence must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Board has adopted the Federal Rules for inter partes proceedings. 37 C.F.R. §2.116(a) (2005). The Board's summary judgment is reviewed in accordance with the requirements of Federal Rule 56. See Lincoln Logs Ltd. v. Lincoln Pre-cut Log Homes, Inc., 971 F.2d 732, 734 (Fed. Cir. 1992) (court gives *de novo* review to the grant of summary judgment in an opposition proceeding).

Mayer/Berkshire states that the decision of the infringement case in the district court does not control federal trademark registration, on principles of either res judicata or collateral estoppel. Mayer/Berkshire states that the decision in the infringement trial was

04-1254                                          4

based on evidence showing that much of Berkshire Fashions' use of the word BERKSHIRE was in its trade name, in usages such as the label "By Berkshire Fashions" or on packages, but not in trademark use; and that this presentation explains the jury verdict that there was not a likelihood of confusion between Berkshire Fashions' and Mayer/Berkshire's identical marks. Thus Mayer/Berkshire argues that the evidence presented to the district court does not warrant the summary judgment in the opposition proceeding. Mayer/Berkshire also states that the Board is required to consider issues of priority of use and the scope of the goods in the Class 25 application, issues that were not before the district court. Mayer/Berkshire urges that preclusion was improperly applied by the Board.

Res judicata, or claim preclusion, protects against re-litigation of a previously adjudicated claim between the same parties or their privies. As discussed in Parklane Hosiery Company, Inc. v. Shore., 439 U.S. 322, 326 n.5 (1979), "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." In Jet, Inc. v. Sewage Aeration Systems, 223 F.3d 1360, 1362 (Fed. Cir. 2000) this court on reviewing a cancellation proceeding on appeal from the Board, elaborated that "a second suit will be barred by claim preclusion if: (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first."

In the absence of res judicata, the related principle of collateral estoppel or issue preclusion can also bar relitigation of the same issue in a second action. In Parklane, 439 U.S. at 326 n.5, the Court explained that "[u]nder the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the

prior suit precludes re-litigation of issues actually litigated and necessary to the outcome of the first action."  In Montana v. United States, 440 U.S. 147, 153-55 (1979) the Court summarized the requirements of collateral estoppel as (1) identity of an issue in a prior proceeding, (2) the identical issue was actually litigated, (3) determination of the issue was necessary to the judgment in the prior proceeding, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issue in the prior proceeding.

In Jet, Inc. the court explained that a trademark infringement action in the district court is not automatically of preclusive effect in a cancellation proceeding in the PTO, for a claim for trademark infringement may not be based on the same transactional facts as a petition to cancel a registered mark, or the facts relevant to infringement may not be sufficiently applicable to trademark registration to warrant preclusion.  In a trademark infringement action, the owner of a registered mark sues for relief from the injury caused by the defendant's actual sale, offering for sale, or advertising of goods or services bearing the challenged mark, whereas an opposition to registration is based on the content of the registration application.  Although to succeed in an opposition proceeding the opposer must show that "he would be damaged by the registration of a mark upon the principal register, including as a result of dilution under section 43(c) . . . .", 15 U.S.C. §1063, the opposer need not show actual injury, and is benefitted by prior registration and prior use.  These different causes of action may involve different sets of transactional facts, different proofs, different burdens, and different public policies.  Registrability is not at issue in infringement litigation, and although the likelihood of confusion analysis presents a "superficial similarity," differences in transactional facts will generally avoid preclusion.  Jet, Inc., 223 F.3d at 1364-65.

The Board emphasized this rule in <u>American Hygienic Labs., Inc. v. Tiffany & Co.</u>, 228 USPQ 855, 857 (TTAB 1986), explaining that in an opposition proceeding "a claim of infringement before the court and a claim of priority and likelihood of confusion before this Board are different claims.  The former claim is, in essence, a claim of injury resulting from applicant's <u>use</u> of its mark in commerce; the latter claim, in essence, is a claim that opposer believes it would be damaged by <u>registration</u> of applicant's mark."  Again in <u>In re Infinity Broadcasting Corp. of Dallas</u>, 60 USPQ2d 1214, 1218 (TTAB 2001) the Board stated that "in Board proceedings, likelihood of confusion is determined independent of the context of actual usage.  In an infringement action, on the other hand, the context of the use of the mark is relevant."  <u>See</u> <u>generally</u> J.T. McCarthy, <u>McCarthy on Trademark and Unfair Competition</u>, §32:82 at 32:143 (4th ed. 2004) ("A claim for infringement is not the same as an *inter partes* claim for opposition or cancellation against another's registration of a mark.  Thus, an opposer would not necessarily be barred by the rule of claim preclusion when it lost a previous infringement claim in court.")

The issue litigated in the district court action was whether the marketing by Berkshire Fashions of specific products with either the BERKSHIRE mark or the Berkshire Fashions trade name was likely to cause confusion with Mayer/Berkshire's registered BERKSHIRE trademarks.  In an opposition proceeding the question of likelihood of confusion requires consideration not only of what the applicant has already marketed or has stated the intention to market, but of all the items for which registration is sought.  The parties dispute the extent to which Berkshire Fashions' application embraces a broader statement of goods than those before the district court; this aspect alone rendered summary judgment inapplicable, for the Board did not consider the separate goods in the Class 25 application,

but stated that all "garments" were included in the district court judgment. Precedent and practice require a more detailed analysis.

In the opposition proceeding, Mayer/Berkshire proffered evidence of actual confusion which it states arose from materially changed marketing practices by Berkshire Fashions after the district court's judgment. A change in trademark usage can constitute a change in transactional facts that avoids preclusion based on the earlier non-infringement decision. It is not irrelevant if, as Mayer/Berkshire asserted in opposing the grant of summary judgment, Berkshire Fashions' earlier inconspicuous marking of some goods with labels bearing only the trade name, has evolved into major marketing activity promoting the trademark BERKSHIRE in a manner that has, according to Mayer/Berkshire, caused significant actual confusion. Mayer/Berkshire presented sufficient evidence on this aspect to negate the grant of summary judgment based on preclusion.

Mayer/Berkshire also argues that the issues were not identical because the infringement action was based on Berkshire Fashions' use of the BERKSHIRE mark with the goods in evidence, showing that the trial exhibit list did not include any sweaters, vests, or pants, all of which are included in the Class 25 application. Mayer/Berkshire points out that the registration would not be limited to the specific articles in evidence in the district court. Berkshire Fashions responds that the items were the same in both proceedings. The Board did not resolve the question of what was in evidence at the infringement trial, but held that it sufficed that "garments" were before the district court. However, this term does not correlate with the specificity of the trademark classification, and does not establish preclusion as to the specific items for which registration is sought and opposed.

Mayer/Berkshire also states that Berkshire Fashions has significantly changed its marketing and advertising practices, and recites examples of actual confusion not previously experienced, citing Opryland USA Inc. v. Great American Music Show, Inc., 970 F.2d 847, 853 (Fed. Cir. 1992) for its holding that the Board had improperly granted summary judgment where it had denied the non-moving party "the right, in accordance with Rule 56(f), to obtain evidence on the material facts of public perception and actual confusion." Viewing the proffered evidence in the light most favorable to Mayer/Berkshire, as the Board was required to do, see Olde Tyme Foods Inc. v. Roundy's Inc., 961 F.2d 200, 205 (Fed. Cir. 1992), Mayer/Berkshire presented evidence of changed circumstances in the five-year period after the district court's judgment that may be relevant to the issue of likelihood of confusion in the opposition proceeding, again rendering preclusion improper. See Litton Industries, Inc. v. Litronix, Inc., 577 F.2d 709, 711 (CCPA 1978) ("This court has previously held that res judicata and collateral estoppel are not applicable where 'it is apparent that all the questions of fact and law involved [in the second proceeding] were not determined in the previous proceedings.'") (quoting Universal Overall Co. v. Stonecutter Mills Corp., 310 F.2d 952, 956 (CCPA 1962)).

Caution is warranted in the application of preclusion by the PTO, for the purposes of administrative trademark procedures include protecting both the consuming public and the purveyors. Thus the party objecting to a registration may raise grounds not only of commercial injury to itself, but of confusion or deception or mistake to the consumer. The public policy underlying the principles of preclusion, whereby potentially meritorious claims may be barred from judicial scrutiny, has led courts to hold that the circumstances for preclusion "must be certain to every intent." Russell v. Place, 94 U.S. (4 Otto) 606, 610

(1878) (denying preclusion in a patent infringement case, stating that "According to Coke, an estoppel must 'be certain to every intent;' and if upon the face of a record any thing is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence.")  See Foster v. Hallco Mfg. Co., 947 F.2d 469, 480 (Fed. Cir. 1991) (the proponent of claim preclusion bears the burden of showing that the cause of action in the two suits was the same); cf. McNellis v. First Fed. Sav. And Loan Ass'n of Rochester, New York, 364 F.2d 251, 251 (2d Cir. 1966) ("Finally, although the principles of res judicata should not be frugally applied, cf. United States v. Munsingwear, Inc., 340 U.S. 36, 38 (1950), a reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue.")

The question of the likelihood of confusion presented sufficiently different issues and transactional facts to bar the application of preclusion.  The summary judgment of the Board is vacated, and the case is remanded for further proceedings.

VACATED AND REMANDED